Mr. Kornbrath, this is United States v. Cohen, our third case today, and Mr. Kornbrath, you are going to explain it all to us. Thank you, Judge King. Good to have you here. May it please the Court, my name is Brian Kornbrath. I represent Jeffrey Cohen for purposes of appeal. I would like to begin in regard to the issue as to whether Cohen's Sixth Amendment right to counsel was denied at sentencing. One issue before the Court is whether or not it was a critical stage of the proceeding. Clearly it was. We concede that there were at least... You're talking about when he wanted a lawyer for the sentencing? Yes, Your Honor. You're just focused on that? Yes. He's not complaining about the trial or anything? He's satisfied with his representation in trial? He cannot complain, Judge, whether he's satisfied or not. There's a real tension between the Feretta right to self-representation and the close assistance of counsel. But Cohen made the decision that he wanted to go by himself, so we have to leave that decision to him. Okay. There's a very critical point of the sentencing proceedings, though, when Cohen clearly changes his mind. It's when he files his motion to rescind the right to self-representation, and he asks the Court to appoint counsel. Was that the day before he was going to be sentenced? No, Judge, it wasn't. He filed the motion to rescind counsel on November 23rd. The Court did not meet for final sentencing until December 10th. Importantly, it was about two weeks before Cohen filed his motion that the district court judge filed its advisory guideline calculations. These are the same guidelines. When was the guideline calculation filed? It was November 10th, 2015. November the 10th? Yes, the 10th. Before he asked for the counsel. Right. So within that window of time, Cohen does two things. He does his best to try to refute the guideline calculations by filing a pro se Rule 32 objection. Here's where I feel the calculations are wrong. But then again, on the 23rd of November, he files the motion asking for counsel. And in Cohen's own words, I don't know what I don't know. I need assistance for the rest of the proceedings, and that would be the final sentencing proceedings before the district court judge. But didn't he always not know what he didn't know? I mean, the sentencing guidelines, he must have understood that the sentencing guidelines were going to be used to calculate his sentence even before he saw the results of the calculations. I agree with that. The probation office came out with draft pre-sentence reports before then. He had an idea of what was taking place. But I think in Cohen's mind, he believes that he provided detailed actuarial evidence to show on a year-by-year basis what indemnity had to pay out in litigation costs to defend the claims and settlement costs to get rid of the claims. It's a historical set of facts. It was all presented to the district court judge over time. Year by year by year, this is what was paid out by the company. Cohen's claiming that the government witnesses assertion that suddenly a half billion dollars in claims are due goes against everything he provided to the court. And what's important is it's never once... Do you have the JA cite to the motion that he filed? The one you said he filed? The motion to rescind? Yes. I'm sure it's somewhere. I can find it. It's probably in your brief somewhere. The one you said he filed a couple weeks before. I was under the impression that he had done this at the sentencing or just immediately prior to the sentencing. I have the request for counsel as made by Cohen 23 days prior to sentencing hearing and I cite Joint Appendix 60. Joint Appendix 60. All right. Thank you. So again, we feel that it was a critical stage. The record establishes that Cohen was otherwise indigent. The Federal Public Defender Office for Maryland represented him in early parts of the proceeding. Standby counsel was appointed under the Criminal Justice Act. Clearly because of the seized assets and lack of funding, he qualified for court-appointed counsel. But he didn't represent himself for how long? Here and there? Easily. Easily. Throughout the trial, throughout the contested evidentiary stages of the proceeding, up to that point in time when he sees this is where. And they're going through extensive hearings on whether to let him do it. And then the judge is letting him do it with the standby counsel. Right. And he goes through the trial representing himself. And then he had the standby counsel. And then he had the sentencing hearing, right? How many? There were two sets of hearings, one in September of 15 and then they continued in November of 15. Altogether, what, a couple weeks? I would say maybe five or six days total. Five or six days of hearings on this sentence. Right. And he's representing himself. Right. And then when the guideline calculations came out, they discovered he might be facing life in prison. At the hearing where he's asking for counsel, the magistrate judge tells him your guideline calculations are off the charts. That's why I need an attorney. I don't know what I don't know. What could an attorney have done at that point in the proceedings? It's obvious. Anyone that has experience in a criminal case. I'm going to file detailed departure arguments, variance requests to the court. I will object to the findings and the calculations under Rule 32 and ask that the court make findings on those, including loss calculations, unwarranted disparity arguments, what happened in Enron, what happened in Bernie Madoff's case, character reference letters, charitable good works, all of this information a defense attorney can and should provide a court before final sentence is imposed. The government in its argument against Cohen having counsel is talking about calendar adherence. We can't delay proceedings. Each and every case the government relies on deals with jury trials. That's where you have the parties, the litigants, the jurors, potential witnesses, other cases on the runway waiting for jury trial. But the courts consistently distinguish between trial delay and post-conviction proceedings like this. The same concerns aren't necessarily applicable. During all this time was he in custody? Yes, he was. He was detained from the very beginning. And so this was all going on in Baltimore? Yes. So he was doing his work in the jailhouse? My understanding is that they had a court order in place where he'd be transported on a regular basis to look at discovery. A lot of it was electronic. He had a laptop that he had access to. The government makes much of about a particular disc, I think, or a CD-ROM that he took back to the jail improperly. But, yeah, he had that. He had that with him. Now you got into that thing on appeal, in this appeal? The clerk's office for the Fourth Circuit called us and asked us to handle the appeal judge. He wanted to represent himself here in the field, too, didn't he? He did, yeah. And we denied that, I think. I responded to his motion to proceed pro se, and it was denied. But, you know, he's still filing things. He filed a reply, which I don't know if the government has looked at, and he's pretty darn shrewd. If you look at his allegation of error, he's no dummy. And I don't understand why, at the very last minute, you can say a trial judge abused his discretion. If it's not for purposes of delay or done in bad faith, the courts regularly grant the request for counsel. And Cohen wasn't acting in bad faith. He threw up his hands and said, I need help. And there was no reason in the world why the district court couldn't have given him that help. Do you agree that it was a discretionary call? Of course it is. It is. And that's what this judge has to decide. So he has to be abused to not respond to his November 23rd motion by granting it. The government then, they opposed it, right? I mean, it's not entirely clear. I mean, they weren't happy with the request. I think there was a request, look, either, Cohen, you do it yourself, or you transform standby counsel into court-appointed counsel. He still had standby counsel. He did, Judge. He had standby counsel. Right, he had standby counsel all along. But, I mean, any lawyer worth his salt would look at this case and say to the district court judge, you deserve the most reliable information out there in order to decide a fair sentence. It's fair to the government. It's fair to Cohen. It's fair to society who's looking in on that. Well, the fact that one of us may have granted the motion doesn't mean that Judge Borrell abused his discretion by denying it. I think he did abuse his discretion by denying it. If you see the record lacks bad faith, purposes of delay, confirm it's a critical stage of the proceeding, those are very important factors that undercut against denying counsel. The block of information that's never before the court in this case. You're getting down to run out of time. Your client filed a supplemental brief here. Yes, at the appellate level? Yes. Yes, sir. Pro se brief. We filed number four, and he says that the sentence on count 24 is a little over seven, that it's five years more than was allowed here. He gave it 15 years, and the statutory maximum was 10, and that that's a legal error. And I don't know whether you studied on it or whether the government lawyers studied on it or not, but it looks like it might be valid. I'd have to check, Judge. He's been prolific at this. Yes, but that's... He makes an apprentice argument. He does. Right. I understand. And I want a client for the lawyers here today. Right. We ended our reply brief by citing this court's opinion in the Gillis matter, I think, where if you have defendants filing good faith pro se briefs, they at least consider them. I'd ask the court to do that. That's why we didn't reply brief. Well, some of them we've ruled on, and there may be some we haven't. I understand. I have another question about the sentencing before you sit down. I want to hear about the actual loss calculation and your argument there, because I'm not sure I heard any response by the government on that. In 2015, when the court was grappling with the loss, all the court had based on the government witness was best estimates of claims. Even the government witness testified, and we have not analyzed the actual claims. I don't want to make much hay of the Rule 28J letter I filed, but there's two facts the court has to understand. In the receivership case, there was a bar date of January 2015. Any claim filed against indemnity is dead letter and void by that point forward. We're now three years after the bar date against indemnity, and not one claim has ever seen the light of day, ever. The government's loss is based on estimates. Any attorney that came into this case would have said to the district court judge, arm me with the Rule 17C subpoena. Let me get you those claims information, because it's November 2015. The bar date was 11 months ago. I can show you what those claims are to completely undercut the estimates that this government witness provided. So that's another example of what he didn't know. Exactly. Black and Maselli were the government's witnesses. Black and Maselli are the receiver attorneys. Black and Maselli have made $7.3 million without ever showing a claim to the Delaware court. Something's rotten in Denmark. An attorney could have helped in this case. I've got 42 seconds to briefly talk about the farmer claim. I'm asking the court to basically look at two things. Cohen filed a document that requested a farmer hearing. He provided a detailed affidavit that explained why the assets should not have been seized. Farmer requires a very low threshold. It's a prima facie showing you have a right to a hearing. We think it's a cognizable claim, even after a guilty plea. We think he made enough just to get a hearing, and the court should at least remand for a farmer hearing. Thank you. Thank you, Mr. Kornbrad. Mr. Gruber. Thank you, Your Honor. Just a second to take my materials up there. May it please the court. This case arises out of the defendant's fraudulent operation of a major insurance company for a number of years. In 2013, the Delaware regulatory authorities became concerned for the public's welfare and took enforcement action in Delaware state courts. Thereafter, the defendant threatened an attorney representing the state of Delaware, and he hatched a plan to go after those individuals who he felt were responsible for the downfall of his company. How does all this relate to whether or not he was entitled to an attorney to assist him in sentencing or not? It is background, Your Honor. I mean, unless you all want to hear the background. Yes, Your Honor. I would rather hear the legal argument. Following his arrest and detention, Your Honor, he chose to represent himself knowingly and voluntarily waiving his rights under Coretta from November of 2014 all the way up until the final hour of sentencing, essentially the last speech. That's what I understood it to be. You just said all the way up until the final hour of sentencing. I did have the impression that it was the final hour of sentencing during which he asked for yet another attorney. But Mr. Kornbrath makes the argument that there was some indication before that that he wanted counsel at sentencing. To clarify factually, Your Honor, this case, the sentencing proceeding, became a mini-trial in and of itself. And in part, the government would submit that was part of the district court trying to give the defendant, the pro se defendant, every benefit of the doubt here. The sentencing began in September with three days of evidentiary testimony by the government witnesses and the defendant, three more days in November. And as the court has heard, it wasn't until after the court issued its factual and advisory guidelines calculation in November that the defendant requested to have counsel appointed. It's correct that it was filed on the 23rd. But the only thing that remained in the proceedings at that point was one hour of argument by both sides and the pronouncement of the sentence. So we have a sentencing proceeding which is already 85% completed by the time he makes this request, Your Honor. And as the government put forth in its brief... The one hour was specified by the court that we're going to come back here and we'll give you one hour. There's nothing in the rules about restricting everything to an hour, is there? That's correct. That was the scheduling decision of the district court prior to the defendant filing his request for counsel. And on what date was the final one hour of sentencing? The final one hour was held on December 10th. Okay, so it was November 23rd was when he filed the motion. Correct. And the sentencing wasn't actually complete until December 10th. Right. He filed his motion shortly before Thanksgiving. The court held the hearing very soon after the Thanksgiving holiday. And then the sentencing was 10 days after the hearing on the request for counsel. When was the hour specified? We're going to have an hour of argument for each side. Six days earlier, November 17th, Your Honor. November 17th, we're going to give you an hour. Yes, the court's... And on December the 10th. That's correct, Your Honor. That's when he responded with a motion to rescind his self-representation. That's correct, Your Honor. And, you know, one of the things we focused in our briefs was how long the defendant had represented himself, how many different types of proceedings he had chosen to represent himself in. There was nothing fundamentally different about this last hour of sentencing that made it different than all the different proceedings he'd handled before. And how many standby counsel or counsel had he had before that he got rid of? He had, depending on how you count, two initial retained attorneys, and there may have been one who spoke with him and or represented him but didn't enter into the record. Then there was the appointed federal public defenders in Maryland that represented him for approximately five months. And then he represented himself from November of 2014 forward having three different standby counsel. And we get into this a little bit in the context of the farmer issue, which I'll deal with later. Did the standby counsel be changed because the government was saying he had conflicts with them and the judge had given it up? Mr. Cohen expressed dissatisfaction with his first counsel. That became a point of dispute that he had that led to his farmer motion. By first counsel, you refer to the public defender? I'm sorry, the first standby counsel, Your Honor. My mistake. That was after the public defender. That's correct. This is in around February of 2015. He's having problems with his first standby counsel. Then he totally refuses to consider the second standby counsel that the magistrate judge lines up for him because he's upset with that standby counsel and how he believes that standby counsel. He wanted a biggish standby counsel. That's correct, Your Honor. He submitted a detailed request to the magistrate judge of how he wanted an interview process set up for the second standby counsel. And he used the fact of self-representation throughout the case. He believed it was to his advantage. He wrote to myself and pointed that out to the government. He wrote to the court and made special requests for opportunities to come review discovery for special chairs, for special pens, for a variety of other things. He felt that he was the best litigant for himself. He felt that he was the most effective advocate for himself. And it was not until November that he changed this. And we agree with the defense that this was a direct response to the factual and advisory guidelines calculation coming out from the district court. What he really wanted was a do-over, Your Honor. And the magistrate judge on December 1st. Now, would that be the first time that he knew that he was facing life? No, Your Honor. That's the first time that he knew that's what the district court felt were the guidelines calculation. Okay. It was 51, life capped at 57 years by the statutory maximums. So the defendant was put on notice as to the potential guideline calculation. Back in June, the government had put in the plea agreement the various enhancements that were potentially applicable. The first pre-sentence report came out in August, Your Honor. The defendant did not sit blithely by. Instead, he submitted detailed sentencing memorandum. He filed lots of objections to the calculation of the lawsuit in this case. He filed lots of points of law with regard to all the different various guideline issues in this case. And the pre-sentence report was revised five different times in response to comments by the government, by the court, and by the defendant. And as early as September, the pre-sentence report stated that, excuse me, the end of August, the pre-sentence report stated that the calculation by the probation office was for life, level 51. So the defendant had three-plus months after that pre-sentence report came out when he knew that's what he was facing. Yet he acts surprised in November. What happened in November is that he knew what the judge thought. He knew what the judge's determination was. And in his motion, he doesn't just seek counsel. When he files this on November 23rd, he specifically asks for delay. He asks for an attorney to be appointed to plead the facts, ignoring the fact of where we were procedurally in the case at that point. At that point, the judge had already issued the factual and advisory guidelines calculation.  He had been given six full days of sentencing to put in any facts that he wanted, relating to the calculation of the guidelines or various other issues. And he represented himself through that. It was only after he got an adverse decision that he wanted to have counsel come in. And he didn't want to just have counsel. He wanted to postpone the proceedings and delay. And the court below pressed him in the December 1st hearing about this, pointing out to him that it looked like he just wanted to go back and start over from the beginning of the case. And the defendant said, I see your point, Your Honor, before then backtracking and trying to give explanations as to why that isn't what he wanted. The court below made a factual finding that any appointment of counsel would have required postponement of the December 10th date. And the government believes that's important in this case. Because under the case law we've cited, not only is there an abuse of discretion standard applied to this, and not only under West, this Court's decision in West, does the court look to the timeliness of the request. In this case it was made well after the sentencing proceeding had begun. In fact, for the final hour was the only time that he asserted this. But also we had countervailing public interests here in the orderly administration of justice. Quite frankly, Your Honors, the victims had been concerned for their safety. And what would happen with this case since June of 2014 when the defendant was the victims, the people who the evidence came out that the defendant was trying to harm. The judge, the state court judge, moved out of his house for a period of time as a result of the threat he perceived from this defendant, who he called at sentencing, scary smart. So we had a public interest in resolution of this case. Moreover, the case was ripe for decision. The district judge had heard the four days of trial testimony. Did this record show those threats and things? Yes, Your Honor. In fact, they were credited by the district court at the sentencing, in which it found that there was an apparent attempt by the defendant to harm those he viewed as responsible for the taking of his company, for the downfall of his career. And the government put in ample evidence in the record at sentencing about this harm, including the $25,000 firearm he had purchased, the ammonium nitrate he had purchased, the travel to Delaware, the recordings he made of attacking and killing various individuals. But returning to the issue of counsel for this final hour, this defendant had handled evidentiary hearings. He'd gone through the crucible of trial, doing opening statements, doing cross-examinations of dozens of government witnesses, arguing legal points, doing sentencing proceedings in which he pled the facts and the law. And there was nothing unique or different about this one hour that remained. We believe that the district court, that the court below correctly exercised its discretion in denying this issue. Under the case law, the court is entitled to also consider, as Judge Thacker pointed out, the issue of the defendant's relationship with counsel. And in this case, he had many problems with counsel. As the court pointed out, we even see here in the Court of Appeals that he sought to represent himself due to complaints about counsel. So the court below had no assurance that if it appointed counsel for the final hour, that there wouldn't be some other additional change or complaint that would occur in the 10 days remaining. Can you address the farmer issue? As I understand it, it's for release of his funds so he can hire his own standby counsel. That would be an extension of the policy matter. Should we go down that road? The government would submit we should not, Your Honor. The purported farmer request, as we put forth in our brief, when you look at it in the timeline, was really a request to release seized funds for standby counsel. And that is apparently conceded by the defendant now at argument, because they're conceding that he all along made the decision to represent himself until November of 2015. That being the case, the government would submit that there is no due process right to release seized funds for standby counsel. In fact, the case law is uniform that once you make the decision to represent yourself, whether you have standby counsel is not an absolute right. It's in the discretion of the court. And that the right to have counsel represent you and the right to represent yourself are mutually exclusive under this court's case law. And so the decision of the court below, both the magistrate judge and the district court, was appropriate and supported by the law. Just to address one thing that I'm quickly remembering, Judge Thacker, the motion to rescind was at JA 1824. Sorry, that's a little bit out of place in my statements here. But Judge Floyd, the defendant first makes the request for counsel for the release of seized funds in February. The government responds and says he appears to be representing himself. Why is he making this request? The defendant makes clear that the request is for funds to pay for standby counsel. And the government believes that's not called for. Even if you applied a due process right to release seized funds for standby counsel, he didn't make the showing required by Pharma. He didn't make a sufficient factual showing like in Pharma where you had the issue of an attorney being told by the government agents that they seized things improperly. Here there was no factual basis to find that the seizures were improper. Returning to the issue of counsel for the final hour of argument, one thing that the government also wants to stress is that there was a manipulative motive by this defendant. Read in the entire context of this case, not only was it untimely. Did the judge find that? The judge made the finding that he was not giving a good reason for it. The court did not use the word manipulative but said that the reasons given didn't make sense and were not good. There was no good cause given by him. Manipulative is your term. Manipulative is our term and the term in the case law. You also find cases that refer to mischief or a ploy by the defendant. But the judge didn't make a finding. The judge's finding was that the reasons given were not good, that they didn't warrant the appointment of counsel. Right. And one of the things we point to in our brief for why this court could make a finding of manipulation in addition to what the magistrate judge found was that in his motion the defendant falsely claimed that he wanted counsel all along, that he's conceding on appeal that that isn't what he wanted. So he's writing something in his motion and in his arguments asking for counsel. That's at JA 1835, saying I wanted counsel all along. That's contrary to the record in this case. And that's an evidence to this court that the defendant's request was merely manipulative, merely an attempt to start back, excuse me, at the beginning and to have this done all over again. The government believes that as to the issue of counsel in December 2015, there was an appropriate exercise of discretion. The court was entitled to consider the entire history of this case, a year and a half of proceedings, during which the defendant sought to represent himself for over a year. The defendant didn't make this request right after the trial, like in some of the cases cited by the defendant. He didn't make it in June. He didn't make it in the summer when he was filing the sentencing memorandum. He didn't make it during the evidentiary phase. He only made it after he knew that the district judge, the one who was going to finally pronounce his sentence, was against him. And the government submits that that's important. We had countervailing public interests here. The decision was right for adjudication. The judge had heard the trial evidence, six days of sentencing, and was teed up and ready to go. The district judge had just spent all this time putting together essentially a 15-page single-spaced analysis of the whole case, calculating the guidelines, making findings. And the judge was ready to hear the final arguments and make a decision. So there was an issue of finality. And if this had gotten pushed off, as the magistrate judge found, then there was the potential. Does the government have a response to appellant's argument regarding the calculation of loss? So as to the calculation of loss, the government read the court's order as dismissing argument four of the appellant's brief with regard to the guidelines calculations. That's the order that the government received from the court. So I apologize for not including that in the government's brief. We felt that that had been dismissed by the court pursuant to the appellant waiver. Well, appellant's brief includes 22 pages on this argument. It's curious to me that if that is your argument, why it wasn't that you didn't take one sentence to add it in here. We felt it had been dismissed by the court. I understand. So we had filed a motion to dismiss after the filing of their brief, and the government's motion was granted in part as to issue four, so we didn't address it. In the government's view, the loss calculation was perfectly appropriate here. The court heard all of the evidence through the sentencing phase. There was ample evidence in the record that the defendant had accumulated way more than the $65 million required for the calculation of loss under the guidelines. Here, the $65 million was the threshold. The court found that the loss was $137 million under one theory, and under the alternative theory based upon the proof of claims, it found that it was $126 million of loss. So we had two different ways that the district court relied upon in its guidelines calculation in finding that the loss in this case exceeded the $65 million threshold for honors. The $100 million loss amount was supported by all of the evidence in the record, including the premiums that he collected and the fact that this company was entirely fraudulent. It was undercapitalized at the beginning and continually undercapitalized throughout so that Mr. Cohen was essentially just writing policies and thinking that that was satisfying his obligations, whereas the district court pointed out he needed to have a cash basis to pay out on those policies if people needed to see claims. In conclusion, Your Honors, the government believes that the court below properly exercised its discretion in denying counsel for the December 10th hearing. This is a case in which the defendant had the opportunity to request counsel for over a year, did not do so, made the decision to represent himself, saw himself as the most effective advocate for his position. He only did so after the court made a finding against him, and he could tell which way the court was leaning in terms of sentencing. The defendant's motivations for this smacked of manipulation and delay. He specifically sought delay, and he specifically ignored the procedural stance of the case. He was asking for motions to be filed. Even in this court, the appellant's brief asked for bringing in experts and adjusters to address the issue of loss. That procedurally ignores where the case was on December 1st, 2015, when he was asking for counsel to be appointed. By then, all the evidence had been wrapped up. You've been in this thing all along? I have, Your Honor. You've got a lot of investment in it, don't you? I do, Your Honor. What do you say about this count 24 issue that he raises in that supplemental brief number 4? Well, I have to admit, Your Honors. Do you want a chance to respond to that in writing or something? If the court requires a response on that, we would ask for the chance to submit something supplemental to that, because Mr. Cohen did make many pro se arguments, and we did not have the opportunity to prepare adequately for all argument as to all of them. One thing I would say, though, if the court is thinking about that issue, is that the maximum penalty on count 1 was 20 years, and the maximum penalty on one of the other counts was 20 years, so we easily exceed the 37 years that the court ended up imposing as the final sentence, which is another issue I haven't had enough time to go into. But he had appointed counsel speak at the final hour of sentencing. That stand-by counsel went through all the 355-3A factors, and so there's a harmless error analysis that can be applied to that as well. We don't know either. He says that he got five years too many on that one count, as I recall. I understand, Your Honor. Maybe we'll get Mr. Kornbrad to submit something to us. Thank you, Your Honor. What do you need, 10 days? That would be fine, Your Honor. And also we have the defendant's history with counsel. As to the request to release seized funds for stand-by counsel, we agree with Judge Floyd that that's a really, really far reach under the existing case law. The Farmer case is talking about the release of seized funds for representative counsel. We don't think there's a due process interest in what he was requesting here, and even if there was, he didn't make the factual allegations that were necessary to convene a Farmer hearing. So unless the Court has any other questions, I would ask you to affirm the conviction and sentence in all respects. Thank you, Your Honor. Thank you, Mr. Gruber. We appreciate you. Mr. Kornbrad? A few points, Judge Thacker. I misspoke. If you look at the docket entry, it's Joint Appendix, page 59, which establishes that Cohen filed his motion for an attorney on November 23rd, 2015. Again, importantly, before the district court files some scheduling order that allocates only one hour of allocutions. You said you scheduled the hour on November 17th. Right. The government's claims... He's not going to turn on that, I don't think. Correct. The government's claims about Cohen being dangerous, we do footnote that in our reply brief. Even the district court judge found, perhaps it reaches a preponderance of the evidence, but I will not go to a higher standard. Even for detention, it has to rise to clear and convincing evidence to stay in jail. He didn't even find that standard. The Sixth Amendment right that we raised does not allow for harmless error analysis, as the government claims. Back to the claim information. In the context of this case, the claims have never come to light in over three years. I've alerted the government to that fact repeatedly, asked them to investigate why these claims aren't being shared with the state court. All we have is radio silence. This is a very important point that any experienced attorney would have brought to the district court's attention.  Why are you relying on estimates? The information's out there. Briefly in regard to the farmer claim, I concede Judge Floyd's point. If Cohen is asking for a release of funds for hybrid standby council representation, that's off the board. It's not allowed. It's just unheard of. I'm asking this court to look at his two filings. November 18, 2014, he files a detailed statement explaining why the assets were seized improperly, and he lists innocent owner, untainted, excessive loss claims that don't support the forfeiture. Those are all laid out in his pro se pleading. And then on February 9, 2015, that's when he specifically references the farmer case in this court. I want a hearing based on farmer so I can obtain an attorney. I concede it mutates thereafter where he's asking for funds for standby council, et cetera. But if you give these pro se pleadings a fair read, at that point in time, Cohen is making a factual showing to support the hearing, and he's asking for the hearing, because farmer itself requires the hearing to determine if funds are available for private council, not hybrid council. The last thing I wanted to point out is I welcome the court to refer to our reply brief at page 15, where we look at another district court case from Maryland where this case originates and the very limited threshold showing that's required for farmer. Mere assertions were enough to get it because the district court judge found at this stage, although the proffer is absent of supporting facts, he has made a prime facious showing that the assets at issue are not subject to forfeiture. So the farmer hearing is granted. It's not an insurmountable claim. Thank you. Thank you, Mr. Kornbrath. We appreciate your work in this case. Thank you, sir. Take it on. We'll come down and bring counsel and then call the next.
judges: Robert B. King, Henry F. Floyd, Stephanie D. Thacker